UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON BLANCHARD,

                          Plaintiff,

             -v-                              1:25-CV-423

KIEWIT POWER
CONSTRUCTORS CO.,

                   Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

PHILLIPS & ASSOCIATES, PLLC         BRITTANY A. STEVENS, ESQ.
Attorneys for Plaintiff             MORGAN L. MICKELSEN, ESQ.
45 Broadway, 28th Floor
New York, NY 10006

LEWIS BRISBOIS BISGAARD             ERIN CAIN, ESQ.
   & SMITH                          PETER T. SHAPIRO, ESQ.
Attorneys for Defendant
7 World Trade Center, 11th Floor
250 Greenwich Street
New York, NY 10007

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

On April 4, 2025, Jason Blanchard ("plaintiff" or "Blanchard") filed a six-count action against his former employer Kiewit Power Constructors Company ("Kiewit" or "defendant"), alleging discrimination, hostile work environment, retaliation, and constructive discharge in violation of the Americans With Disabilities Act of 1990 ("ADA"), the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and the New York State Human Rights Law ("NYSHRL").  Dkt. No. 1.

On July 8, 2025, Kiewit moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to partially dismiss plaintiff's complaint.  That motion has been fully briefed and will be considered on the basis of the submissions and without oral argument.  Dkt. Nos. 1, 12-1, 12-2, 13, 17.

## II. BACKGROUND

### A.  Plaintiff's Health

Blanchard, a resident of Columbia County, New York, enlisted in the United States Army in 2000, where he was deployed to Iraq on multiple occasions in 2003 and 2004.  Compl. at ¶¶ 7–8.  During these deployments, plaintiff operated machine-gun equipment on transport vehicles and engaged in active combat which caused him to suffer from nightmares and other psychological symptoms.  *Id.* ¶ 8–9.  Blanchard's symptoms affected his

ability to perform his duties, and he was diagnosed with PTSD in April of 2005. *Id.* ¶¶ 9, 12. On December 5, 2005, plaintiff was discharged from military service. *Id.* ¶ 10.

## B. **Plaintiff's Employment**

Kiewit is a foreign corporation with a principal place of business in Nebraska. Compl. ¶ 17. On or about October 10, 2022, plaintiff was hired by Kiewit as a Quality Manager I. *Id.* ¶ 20. Once hired, Blanchard was trained in defendant's district office in Lenexa, Kansas. *Id.* ¶ 21. During his training, plaintiff was warned by Quality Manager Sarah Mahurin ("Mahurin") that another Kiewit employee, Quality Director Elbert Rojas ("Rojas"), "was not a good manager." *Id.* Mahurin instructed Blanchard to call her if he ever felt compelled to quit his job. *Id.*

In December of 2022, plaintiff reported to Kiewit's Albany, New York office, where he met Rojas for the first time.[1] Compl. ¶ 24–25. Plaintiff contends that from his very first encounter with Rojas, he was discriminated against when Rojas treated him as a nuisance and made clear attempts to avoid speaking with him. *Id.* ¶¶ 25–26. Thereafter, in January of 2023, plaintiff moved to New York "full time" to prepare for his first day working for Kiewit in Albany. *Id.* ¶ 27. Around the same time, plaintiff alleges Rojas

---

[1] Confusingly, plaintiff alleges he reported to the Albany office both in mid-October *and* December of 2022. *See* Compl. ¶¶ 22, 24. It is unclear how much time plaintiff spent in Kiewit's training program in Kansas or precisely when he arrived in Albany based on the pleadings.

ignored and refused to interact with him even though plaintiff was "about to become his subordinate." *Id.* ¶ 28. In late January, plaintiff started working in Kiewit's Albany office. *Id.* ¶ 29. On or around January 23, 2023, plaintiff's "job sponsor and [s]upervisor" Steven Mahoney ("Supervisor Mahoney"), who also worked out of defendant's Kansas location, visited the Albany office. *Id.* ¶ 30.

Plaintiff and Mahoney went to dinner in Albany, where they discussed how Blanchard's employment with Kiewit was going.[2] Compl. ¶ 32. Plaintiff told Mahoney that he was experiencing difficulties with Rojas and that Rojas had "apparent hostilities" towards him. *Id.* ¶ 33. According to plaintiff, Supervisor Mahoney indicated he had observed Rojas' hostility towards plaintiff firsthand, adding that Rojas spoke to plaintiff in "an aggressive and dismissive way." *Id.* ¶ 34. Plaintiff also alleges that Supervisor Mahoney told him Rojas was "not a happy person[,]" "difficult to work for[,]" and compared working for Rojas to playing a game. *Id.* ¶¶ 35–36. Mahoney asked plaintiff if he could play that game, to which plaintiff replied that he would "deal with Rojas' behavior for as long as he could." *Id.* ¶ 36.

---

[2] Once again, the timeline set forth in plaintiff's pleadings is confusing. For some period of time starting in October of 2022, Blanchard was being trained by the defendant in Kansas. Compl. ¶ 20. Plaintiff's first day in Kiewit's Albany office was in late January. Compl. ¶ 29. However, while plaintiff's complaint details Supervisor Mahoney visiting Albany in both December 2022 and January 2023, plaintiff apparently only discussed Rojas' conduct with Supervisor Mahoney during the December visit even though he did not start working in Albany until January. *See Compl.* ¶¶ 30–33.

In February 2023, plaintiff alleges Rojas' conduct towards him escalated when he started making jokes about plaintiff's weight.  Compl. ¶ 37.  Plaintiff contends there were multiple instances, including during staff meetings, where Rojas remarked that plaintiff did not "miss meals" and "wouldn't turn [down] a buffet."  *Id*. ¶ 38.  Plaintiff alleges these types of comments regarding his weight became "so frequent and distressing" for him that he sought medical intervention for his weight.  *Id*. ¶ 39.  Thereafter, Blanchard lost sixty pounds and Rojas stopped making jokes about his weight.  *Id*.

Around August of 2023, plaintiff alleges Rojas' began to target his struggles with mental health and "related disabilities."  Compl. ¶ 40.  Plaintiff contends that, in the summer of 2023, he was having a casual conversation with Rojas in an office when the discussion turned to medication and treatment of disease.  *Id*. ¶ 41.  Plaintiff disclosed to Rojas that he had PTSD stemming from his time in the military and takes mediation to alleviate his symptoms.  *Id*.  Plaintiff alleges that Rojas responded: "In my family, we don't do that, we 'man up.'"  *Id*. ¶ 42.  Blanchard construed this to mean that Rojas saw him as weak for taking medication to treat his PTSD. *Id*. ¶ 43.  After this incident, plaintiff claims Rojas continued making jokes about his PTSD, mocking his need for medication, and jokingly warning co-workers to be careful what they said to plaintiff because his PTSD could make him a danger.  *Id*. ¶ 44.

In October of 2023, Blanchard alleges Rojas made further disparaging remarks directed towards his status as a military veteran, including comments mocking his work product and suggesting that college educated individuals were more intelligent than people who, like plaintiff, served in the military without attending college. *Id.* ¶ 45. According to plaintiff, Rojas made these remarks on numerous occasions causing him emotional distress, affecting his work performance, and putting him in fear of losing his job. *Id.* ¶ 46.

On or about February 1, 2024, plaintiff alleges Rojas began to "create an audience" for his remarks about plaintiff's mental health. Compl. ¶ 47. During a meeting with plaintiff and his co-workers, Rojas allegedly stated that if plaintiff were to not take medication for his PTSD, "you do not know what kind of person you are going to get." *Id.* That same day, plaintiff contends Kiewit Quality Specialist Carol Zheng ("Zheng") reported his discriminatory comments to Human Resources ("HR") Director Britney Mackey ("HR Director Mackey"). *Id.* ¶ 49.

In response to Zheng's report, HR Director Mackey asked plaintiff to meet in her office in Albany the same day the report was filed. Compl. ¶ 50. During this meeting, plaintiff told HR Director Mackey he believed Rojas was trying to "overwork him in order to force him to quit." *Id.* ¶ 51. According to Blanchard, HR Director Mackey then asked about Rojas' comments during

the meeting early that day and whether plaintiff was upset or offended by them. *Id.* ¶ 52. In response, plaintiff contends that he fully disclosed entire history of Rojas' remark directed towards his disability and military status. *Id.* ¶ 53.

Although HR Director Mackey assured Blanchard she would speak to Rojas, she provided no additional assistance or guidance. Compl. ¶ 54. Concerned that his interaction with HR Director Mackey would not resolve his issues, Blanchard then contacted Supervisor Mahoney to ask what could be done regarding Rojas' behavior. *Id.* ¶ 55. The only solution Supervisor Mahoney suggested was to transfer Blanchard away from Rojas. *Id.* ¶ 56.

## C. **Plaintiff's Alleged Discharge**

The following day, after discussing Rojas' behavior and plaintiff's concerns with Mahoney and Mackey, plaintiff's job sponsor Paul Stewart ("Supervisor Stewart") called Blanchard to obtain more information about what had transpired with Rojas.[3] Compl. ¶ 57. Blanchard then detailed his experiences with Rojas to Supervisor Stewart, who replied: "Sounds like [Rojas]." *Id.* ¶ 59. Supervisor Stewart told plaintiff he was expected to stand up to Rojas, which he construed as Supervisor Stewart "acquiescing to Rojas'

---

[3] According to plaintiff, Supervisors Stewart and Mahoney were both job sponsors for plaintiff as to his employment with Kiewit, and each had the authority to "hire, fire, discipline, or otherwise affect the decision maker of the same" with respect to his employment. Compl. ¶¶ 57–58. It is far less clear whether Rojas had the same authority over plaintiff.

discriminatory behavior and putting the onus on [p]laintiff […] to resolve Rojas' pattern of offensive and discriminatory comments." *Id*. ¶ 60.  Plaintiff claims Stewart proceeded to express his disappointment in Blanchard's job performance, indicating that "we had higher expectations" when he was hired.  *Id*. ¶ 61.  Plaintiff contends this was the first time he was ever told of any dissatisfaction with his performance.  *Id*. ¶ 62.  Stewart then told Blanchard that Mahoney would work on getting him transferred "out of New York[,]" but that it would be some time before anything would be done for him regarding Rojas.  *Id*. ¶ 63.

The following day, Mackey requested to meet with plaintiff again, where Blanchard was told he would be transferred to Texas.  Compl. ¶ 64.  On February 26, 2024, faced with the prospect of leaving his family in New York simply for reporting Rojas' workplace behavior, Blanchard decided to resign. *Id*. ¶ 65.

On July 6, 2024, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[4]  Compl. ¶ 5.  On January 10, 2025, the EEOC issued the notice of his right to sue.  *Id*.  Plaintiff now

---

[4] Plaintiff only included a copy of the EEOC Dismissal and Notice of Rights with his complaint. Dkt. No. 1-1.  A copy of the Charge of Discrimination accompanies defendant's motion.  Dkt. No. 12-2.

seeks declaratory relief along with compensatory and punitive damages.

Compl. at 14.[5]

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

---

[5] Pagination corresponds to CM/ECF headers.

## IV.  DISCUSSION

Blanchard's complaint brings claims for: discrimination and hostile work environment in violation of the ADA (Count 1), retaliation in violation of the ADA (Count 2), discrimination and hostile work environment in violation of the USERRA (Count 3), retaliation in violation of the USERRA (Count 4), discrimination and hostile work environment in violation of the NYSHRL (Count 5), and retaliation in violation of the NYSHRL (Count 6).  Compl. ¶¶ 77–96.  While not listed as separate causes of action in his complaint, plaintiff also alleges he was constructively discharged by defendant in violation of the ADA, USERRA, and the NYSHRL.  *Id*. ¶¶ 1, 80, 90, 96. Defendants have now moved to dismiss Counts 1 through 4 of plaintiff's complaint, along with any constructive discharge claims.  Def.'s Mem., Dkt. No. 12-1 at 3.

### A.  Discrimination under the ADA

Blanchard's complaint alleges that defendant discriminated against him on the basis of his PTSD.  Compl. ¶ 68.  Plaintiff contends that when Zheng swiftly reported Rojas' remarks to HR Director Mackey, he was informed the following day that he would be transferred from New York to Texas, which would have displaced him from his family and home.  *Id*. ¶¶ 66–67.

"The ADA prohibits employment discrimination 'against a qualified individual on the basis of disability.'"  *Sharikov v. Philips Med. Sys. MR, Inc.*,

104 F.4th 159, 166 (2d Cir. 2024) (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015)) (per curiam) (quoting 42 U.S.C. § 12112(a)). To bring a *prima facie* employment discrimination claim under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of his disability." *Sharikov*, 103 F.4th at 166 (citing *Davis*, 804 F.3d at 835).

Defendant contends that plaintiff has failed to make out a discrimination claim under the ADA because he does not plausibly allege an adverse action. Def.'s Mem., Dkt. No. 12-1 at 20–21. Specifically, defendant asserts that plaintiff has not plausibly alleged that either: (1) his disability was the but-for-cause of Kiewit's decision to transfer him from New York to Texas; or (2) he was ever constructively discharged. *Id.*

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'" *Guerrero v. Albany Med Health Sys.*, 2025 WL 2645540, at *6 (N.D.N.Y. Sept. 15, 2025) (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)) (cleaned up). In general, an adverse employment action "must be more disruptive than a mere inconvenience or

an alteration of job responsibilities." *Id*.  Termination, certain demotions,

loss of benefits, and decreased responsibilities have all been construed as

adverse employment actions.  *Id*.

   The Second Circuit has specified that, in the context of an ADA

discrimination claims, a plaintiff must prove but-for causation.  *Guerrero*,

2025 WL 2645540 at *6 (citing *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d

Cir. 2019)).  Put differently, "plaintiff must prove that absent the defendant's

discriminatory animus, the adverse action would not have occurred."

*Guerrero*, 2025 WL 2645540, at *6.  Thus, "at the pleading stage, plaintiff

must allege sufficient facts to support a finding of but-for causation."  *Id*.

   As stated *supra*, plaintiff's complaint alleges two adverse employment

actions: his transfer from New York to Texas and his constructive discharge

when he resigned after being told of the transfer.  Compl. ¶¶ 64–67.  One day

after Zheng reported Rojas' remarks about plaintiff's PTSD to HR, and after

plaintiff had discussed Rojas' conduct with HR Director Mackey and

Supervisors Mahoney and Stewart, he was informed by HR that he would be

transferred from New York to Texas, requiring him to leave his home and

family.  *Id*. ¶¶ 47–64.

   While the Court finds defendant's decision to transfer plaintiff to Texas to

be proximate in time to Zheng's report, plaintiff's complaint is nonetheless

devoid of any allegations to give even a minimal inference of discriminatory

intent as to the decision to transfer him, *i.e.*, he has not alleged that, but for his PTSD, he would not have been transferred. Rather, plaintiff has alleged being told he was being transferred in order to get him away from Rojas. Compl. ¶ 56. Similarly, plaintiff's decision to resign in the face of his transfer does not include any non-conclusory allegations of defendant's discriminatory animus. Accordingly, plaintiff's ADA discrimination claim will be dismissed without prejudice.

**B.  Hostile Work Environment under the ADA**

Next, plaintiff brings a hostile work environment claim under the ADA arguing that defendant discriminated against him on the basis of his PTSD, retaliated against him for complaining about the discrimination by transferring him from New York to Texas, and constructively discharged him. Compl. ¶ 77–80.

"Because the ADA echoes and expressly refers to Title VII [of the Civil Rights Act of 1964], and because the two statutes have the same purpose— the prohibition of illegal discrimination in employment—it follows that disabled Americans should be able to assert hostile work environment claims under the ADA." *Butrym v. Sarsick*, 2021 WL 1927073, at *5 (N.D.N.Y. May 13, 2021) (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019)). Plaintiffs bringing hostile work environment claims "must show (1) that the harassment was sufficiently severe or pervasive to alter the

conditions of her employment; and (2) a specific basis exists for imputing the objectionable conduct to the employer." *Fox,* 918 F.3d at 74.

Defendant now seeks the dismissal of plaintiff's ADA hostile work environment claim on two grounds: (1) plaintiff failed to exhaust his administrative remedies with respect to his hostile work environment claims under the ADA; and (2) plaintiff has failed to plausibly allege workplace harassment that was severe or pervasive. Def.'s Mem., Dkt. No. 12-1 at 16. In defendant's view, while plaintiff's EEOC charge alleges discrimination and retaliation on the basis of his disability, it failed to allege, or make any mention of, a hostile work environment. *Id.* at 16–17.

Prior to bringing an action in federal court alleging violations of the ADA, "a plaintiff must first file a timely charge with the EEOC." *Basso*, 577 F.Supp.3d at 83 (citing 42 U.S.C. § 12117). The ADA sets forth a 300-day statute of limitations for filing a charge with the EEOC after the alleged unlawful practice occurred. 42 U.S.C. § 12117(a) (citing 42 U.S.C. § 2000e-5). Claims not raised in an EEOC charge may nonetheless be deemed exhausted if they are "reasonably related to claims that were in fact raised in the charge." *Basso*, 577 F.Supp.3d at 83 (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (cleaned up).

Claims are found to be reasonably related to the claims raised in the charge where: "(1) the conduct complained of would fall within the scope of

the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) the plaintiff is alleging retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* (cleaned up).

With respect to the first of these three categories, which is the sole category relevant to plaintiff's complaint, Courts "focus on the factual allegations made in the EEOC charge" to determine whether the charge "gave th[e] agency adequate notice to investigate discrimination on the [newly alleged basis]." *Basso*, 577 F.Supp.3d at 83 (quoting *Mathirampuzha*, 548 F.3d at 76–77). In making this determination as to a newly alleged hostile work environment claim, the Circuit has made clear that hostile work environment claims are distinct from claims of discrete acts. *Id.* (quoting *Mathirampuzha*, 548 F.3d at 77); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (holding that "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") In addition, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

With respect to defendant's exhaustion of administrative remedies argument, plaintiff indeed did not assert a hostile work environment claim in his EEOC charge. In his EEOC charge, plaintiff alleges that, in the Summer of 2023, he disclosed to Rojas that he suffered from PTSD and took medication to alleviate the symptoms related to his PTSD. EEOC Charge, Dkt. No. 12-2 at ¶ 35. According to plaintiff, Rojas responded to this disclosure in a manner that plaintiff perceived to suggest he was weak for taking medication to treat his PTSD symptoms. *Id*. at ¶¶ 36–37. After this incident, plaintiff alleges Rojas continued to make jokes regarding his PTSD including mocking his need for medication, jokingly warning co-workers to be careful how they spoke to plaintiff, and suggesting that he could be "a danger" due to this PTSD. *Id*. ¶ 38.

Plaintiff also alleged that on February 1, 2024, during a meeting with Rojas and other co-workers, Rojas remarked that if plaintiff failed to take his PTSD medication, "you do not know what kind of person you are going to get." EEOC Charge, Dkt. No. 12-2, at ¶ 41. As a result of this meeting, one of plaintiff's co-workers submitted a human resources complaint to Mackey. *Id*. at ¶ 43. Upon review, the Court finds plaintiff's allegations provided the EEOC with sufficient notice to investigate a hostile work environment claim.

However, plaintiff has failed to plausibly allege a hostile work environment claim under the ADA. In addition to the fact that a plaintiff

must show that he "subjectively perceiv[ed] the conduct as abusive, the misconduct shown also must be 'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Fox*, 918 F.3d at 74 (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)) (cleaned up). Accordingly, "[a] plaintiff bringing a hostile work environment claim under the ADA [...] 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" *Fox*, 918 F.3d at 74 (quoting *Harris¸* 510 U.S. at 20). "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance."

In sum, the plaintiff has alleged two separate and discrete incidents where Rojas made offensive remarks on the basis of his disability. While these alleged incidents may constitute "offensive utterances[,]" the Court does not find that plaintiff has plausibly alleged that they were "extraordinarily severe." Further, given the infrequent nature of Rojas' remarks as to plaintiff's disability, the Court does not find the comments to be sufficiently

pervasive.  Accordingly, plaintiff's hostile work environment claim under the ADA will be dismissed.

### C.  <u>Retaliation Under the ADA</u>

Plaintiff also alleges that defendant retaliated against him for complaining about Rojas' discriminatory conduct when they told him they were transferring him the day after Zheng filed a report and constructively discharged him by displacing him from his family and home in order to maintain his employment.

Under the ADA, employers may not "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of […] any right granted or protected by this chapter."  *Sharikov*, 103 F.4th at 159 (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222 (2d Cir. 2001) (quoting 42 U.S.C. § 12203(b))).  Employers are prohibited from taking adverse action against an employee for engaging in a protected activity.  *Id.* (citing *Tafolla v. Heiling*, 80 F.4th 111, 125 (2d Cir. 2023)) (cleaned up).  "An employee can satisfy the protected activity requirement even if his condition 'was not a disability under the ADA' so long as 'he can establish that he possessed a good faith belief that the underlying challenged actions of the employer' violated the ADA."  *Sharikov*, 103 F.4th at 159. (quoting *Sarno v. Douglass Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (cleaned up).

"[T]he elements of a retaliation claim under […] the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (cleaned up). "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Id.* (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 319 (2d Cir. 2015)) (cleaned up).

"An adverse action is 'any action that could well dissuade a reasonable worker from making a or supporting a charge of discrimination,'" and "covers a broader range of conduct than does the adverse-action standard for claims of discrimination.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (detailing the retaliation standard under Title VII)); *see also Sarno*, 183 F.3d at 159 (setting forth that the ADA and Title VII retaliation provisions are substantially the same).

Defendant now seeks dismissal of plaintiff's ADA retaliation claim (Count Two).  Def.'s Mem., Dkt. No. 12-1 at 22.  Defendant asserts that plaintiff has not plausibly alleged his participation in a protected activity because Blanchard fails to plead that he opposed defendant's discriminatory conduct.  *Id.*  In defendant's view, plaintiff has only made "general allegations of mistreatment" that could not have put defendant on notice he was opposing discriminatory conduct.  *Id.* at 32.

Plaintiff has alleged that he was diagnosed with PTSD in 2005 and is therefore disabled within the meaning of the ADA.  Compl. ¶¶ 12–13.  Plaintiff contends that he engaged in a protected activity when, after being the subject of discriminatory remarks directed at his disability on February 1, 2024, one of his co-workers complained on his behalf by reporting the conduct to HR Director Mackey that same day.  *Id.* ¶¶ 47–49.  As a result of this report, plaintiff engaged in a series of discussions the same day Zheng reported Rojas' conduct.  *First*, plaintiff alleges HR Director Mackey requested to speak with him about the report, where he fully disclosed all of Rojas' conduct towards him over the course of his employment with Kiewit.  *Id.* ¶¶ 50–53.  Next, plaintiff had a discussion with Supervisor Mahoney, who told him the only solution would be to transfer him away from Rojas.  *Id.* ¶ 56.  Next, plaintiff discussed the incident with Supervisor Stewart, who informed him defendant would seek to transfer him to a different work

location. *Id.* ¶¶ 56–63. Plaintiff alleges that during this conversation, Supervisor Stewart unexpectedly voiced dissatisfaction with his work performance, something he had been no prior indication of. *Id.* ¶ 61–62. Taking into account plaintiff spoke with multiple individuals employed by defendant either in the HR department or with supervisory authority over plaintiff, he has plausibly alleged that defendant knew that he engaged in a protected activity.

The following day, plaintiff was told he would be transferred to Texas and therefore was "faced with the prospect of leaving his family in New York simply for reporting Rojas' discrimination." Compl. ¶ 65. Plaintiff has alleged that this transfer would "[displace] him from his family and home" and "was in clear violation of complaints of discrimination based on his disability[.]" Compl. ¶ 67. Thus, plaintiff has plausibly alleged an adverse action, *i.e.*, his transfer, along with a causal connection between engaging in a protected activity related to his disability and the adverse action. Put differently, the prospect of being transferred out-of-state in response to reporting discriminatory conduct in the workplace would dissuade a reasonably worker from lodging a complaint. Upon review, defendant's motion to dismiss plaintiff's retaliation claim will be denied.

### D. __Constructive Discharge__

Next, plaintiff alleges that he was constructively discharged by defendant. Plaintiff contends that, after being told on February 2, 2024 that he was being transferred to Texas, and "[f]aced with the prospect of leaving his family in New York simply for reporting Rojas' discrimination, he made the decision to design."

Constructive discharge is one type of adverse employment action which occurs "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (quoting *Morris v. Schroder Capital Mgmt. Int'l,* 481 F.3d 86, 88 (2d Cir.2007)) (cleaned up).

Upon review, plaintiff has not plausibly alleged that his working conditions were so intolerable that he was left with no other choice but to resign. While plaintiff has alleged that being transferred to Texas was an undesirable outcome, he has offered no allegations to suggest his working conditions were so intolerable that he was left with no choice besides quitting. To the contrary, Blanchard has alleged that he made the decision to resign. Compl. ¶ 65. Accordingly, defendant's motion to dismiss plaintiff's constructive discharge claim will be granted.

### E.  Plaintiff's USERRA Claims

Plaintiff also brings claims for discrimination, hostile work environment, retaliation, and constructive discharge under the USERRA.  Compl. ¶¶ 85–90.  Confusingly, in support of his USERRA claims, plaintiff only contends that defendant "engaged in unlawful employment practices in violation of the ADA[, not the USERRA,] by discriminating against him on the basis of his disability (PTSD), and retaliating against him due to his complaints of discrimination by transferring him from New York to Texas, displacing him from his family, and thus constructively discharging [him]."  Compl. ¶ 90.

Kiewit has moved to dismiss each of Blanchard's USERRA claims.  Def.'s Mem., Dkt. No. 12-1 at 8.  In sum, defendant argues that while plaintiff is a United States Army veteran protected under the USERRA, he has failed to plausibly allege any connection between his status as a military veteran veteran and the alleged harassment or adverse action.  *Id.*

USERRA bars discrimination based on an individual's military status. *Hughes v. City of N.Y.*, 2021 WL 7542440, at *6 (E.D.N.Y. Aug. 25, 2021) (citing *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 174 (2d. Cir. 2011)). The USERRA sets forth that "[a] person who is a member of […] a uniformed service shall not be denied […] any benefit of employment by any employer on the basis of that membership." 38 U.S.C. § 4311(a).  At the pre-answer stage, a plaintiff must plausibly allege his military service was a substantial or

motivating factor in the alleged discrimination. *Hughes*, 2021 WL 7542440, at *6 (citing *Hunt v. Klein*, 2011 WL 651876, at *3 (S.D.N.Y. Feb. 10, 2011) (cleaned up).

Although the law is not well-settled with respect to hostile work environment claims under the USERRA, it "properly is read as recognizing hostile work environment claims." *Hughes*, 2021 WL 7542440, at *6. As with ADA hostile work environment claims, USERRA hostile work environment claims are evaluated using Title VII standards and case law." *Id.* (citing *Kassel v. City of Middletown*, 272 F.Supp.3d 516, 541 (S.D.N.Y. 2017)) (cleaned up). Finally, other courts have held that discrimination premised upon a "service-related disability, as opposed to military status," fails to give rise to a cause of action under USERRA. *Hughes*, 2021 WL 7542440, at *6 (collecting cases); *see also Rivera v. Cty. of Suffolk*, 2023 WL 2403616, at *2 (holding that USERRA claims are unsuccessful where based "principally on the assertion that defendant "perceived and/or regarded Plaintiff as suffering from Post-Traumatic Stress Syndrome (PTSD), or paranoia, or anger management issues, or another impairment or disability related in whole or in part to Plaintiff's prior military service and veteran status."). Finally, USERRA claims, like ADA claims, are evaluated under Title VII standards. *Hughes*, 2021 WL 7542440, at *6 (collecting cases).

Defendant now moves to dismiss plaintiff's USERRA claims contending that plaintiff has failed to plausibly connect the alleged harassment and adverse action to his protected status as a military veteran to make out a sufficient USERRA discrimination claim.  Def.'s Mem., Dkt. No. 12-1 at 8. Defendant asserts that Blanchard fails to plausibly allege a hostile work environment under the USERRA because he has not described any conduct that was severe or pervasive.  Def.'s Mem., Dkt. No. 12-1 at 9.  In defendant's view, plaintiff has alleged conduct which amounts to infrequent teasing by a "generally insensitive manager" who exhibited neither animus towards veterans nor took any adverse action against plaintiff.  *Id*.  Although plaintiff has alleged one remark Rojas made regarding the "intellectual disparity" between college-educated individuals and those, like plaintiff, who served in the military without receiving a college education, defendant asserts that a single statement does not give rise to a finding of severe or pervasive conduct. *Id*. at 10.

Upon review, the Court finds plaintiff's USERRA claims to be based on comments Rojas made either ridiculing his PTSD or mocking his work product and making statements suggesting college educated individuals were more intelligent than people like plaintiff that served in the military without going to college.  Compl. ¶¶ 44–45.  Blanchard alleges Rojas made these remarks numerous times causing him emotional distress, affecting his work

performance, and putting him in fear of losing his employment. *Id.* ¶ 46. As an initial matter, Plaintiff's cannot bring a USERRA claim on the basis of disability discrimination. *Hughes*, 2021 WL 7542440, at \*6. In addition, plaintiff has failed to plausibly allege that he was discriminated against on the basis of his military status. Even viewing plaintiff's claims in a light most favorable, the single statement regarding the intellectual disparity between a college graduate and plaintiff does not constitute a discrete act that would give rise to a finding of "severe or pervasive" harassment. The allegation that Rojas unfavorably compared Blanchard's education to that of a college graduate, taken as a single discrete incident, is also not "extraordinarily severe." *Fox*, 918 F.3d at 74. Nor has plaintiff alleged in non-conclusory terms how this statement was materially adverse. Further, plaintiff has not alleged any connection between this statement and any adverse action that followed. Accordingly, each of plaintiff's USERRA claims will be dismissed.

## D. **NYSHRL Claims**

Plaintiff also brings claims for discrimination, hostile work environment, retaliation, and constructive discharge on the basis of disability discrimination in violation of the NYSHRL. Compl. ¶¶ 91–96. A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims. *Graves v. Finch Pruyn & Co., Inc.,*

457 F.3d 181 (2d Cir. 2006) (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 332 n. 1 (2d Cir. 2000).  Insofar as a plaintiff "brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim." *Id.*

Defendant has not moved to dismiss plaintiff's NYSHRL claims on the merits, instead only requesting that the Court decline to exercise supplemental jurisdiction over these claims in the event that his ADA and USERRA claims are dismissed.  Given that plaintiff's retaliation claim under the ADA survives this motion to dismiss for the reasons stated *supra*, his NYSHRL claim will also survive.  Consistent with this standard, plaintiff's remaining NYSHRL claims for discrimination, hostile work environment, and constructive discharge on the basis of his disability must be dismissed for the same reasons his ADA claims for discrimination, hostile work environment, and constructive discharge claims fail as discussed *supra*.

## V.  CONCLUSION

Defendant's motion to dismiss plaintiff's ADA claims for disability discrimination and hostile work environment (Count I), his USERRA claim for discrimination and hostile work environment (Count III), his USERRA claim for retaliation (Count IV), and his NYSHRL claim for discrimination and hostile work environment (Count V) will be GRANTED.  In addition, Kiewit's motion to dismiss plaintiff's constructive discharge claims, which

were not identified as separate causes of action, will be GRANTED. However, defendant's motion to dismiss plaintiff's retaliation claims under the ADA and NYSHRL (Counts II and VI) will be DENIED.

Therefore, it is

ORDERED that

1. Defendant's partial motion to dismiss (Dkt. No. 12) is GRANTED in part and DENIED in part;

2. Plaintiff's ADA claims for discrimination, hostile work environment, and constructive discharge (Count I) are dismissed;

3. Plaintiff's USERRA claims for discrimination, hostile work environment, constructive discharge, and retaliation (Counts III and IV) are dismissed;

4. Plaintiff's NYSHRL claims for discrimination, hostile work environment and constructive discharge (Count V) are dismissed;

5. Defendant's motion to dismiss plaintiff's retaliation claims under the ADA and NYSHRL (Counts II and VI) is DENIED; and

6. Defendant has until March 17, 2026 to file an answer to plaintiff's surviving ADA and NYSHRL retaliation claims.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  March 3, 2026
        Utica, New York.